**Darla D. ROUSE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 97–128.

Supreme Court of Wyoming.

Oct. 14, 1998.

Sylvia L. Hackl, Public Defender; Donna D. Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek; Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

* Chief Justice at time of expedited conference.

TAYLOR, Justice.

Appellant and her companion kidnapped two senior citizens, planning to execute the couple, dispose of the bodies, and appropriate their pick-up and travel trailer. Only the exceptional courage of the victims thwarted that plan, leading to appellant's convictions on charges of conspiracy, kidnapping, aggravated robbery, and aggravated assault. On appeal, appellant proposes that her separate crimes should have merged for sentencing purposes. Finding separate and distinct crimes with cumulative sentences to be a matter of legislative will, we affirm.

## I. ISSUES

Appellant, Darla D. Rouse, posits two issues:

I.  Whether the aggravated assault convictions and the aggravated robbery convictions merge with the kidnapping convictions for sentencing purposes?

II. Whether the aggravated assault convictions merge with the aggravated robbery convictions for sentencing purposes?

The State of Wyoming, as appellee, prefers a more succinct articulation of a single issue:

Whether appellant was properly sentenced.

## II. FACTS

In late July 1996, appellant aided and abetted James Boule's (Boule) escape from a Texas jail, bringing firearms, cash and provisions for a two-week tour of Louisiana, Arkansas, Missouri, Nebraska and South Dakota. When their money ran out in Wyoming, appellant and Boule hatched a plan to kidnap and kill the owners of a truck and trailer rig, thereafter disposing of the bodies in some remote area. Appellant suggested victimization of an older couple with no children, employing a rationale which Boule later described:

Because we were going to kill them and she [appellant] figured that it would be

better if we got an older couple. That way they've already lived and experienced a lot more life than someone younger.

Appellant and Boule pulled into the Powder River rest area on I–90 outside Gillette, Wyoming where they stayed for two days, discussing their plan and screening potential victims. Eventually, appellant and Boule moved to another rest area where, two days later, at noon on August 10, 1996, Gerald and Rose Rockne pulled their truck and trailer in for a lunch stop. When first approaching the Rocknes' vehicle, Boule began to have second thoughts. Appellant urged him on, noting that they were running out of time and money. Employing the twisted logic that governed his actions and those of appellant throughout that ugly day, Boule returned to the vehicle which he and appellant were about to abandon, where he listened to music with an anti-abortion theme to pluck up his spirit for the impending murder of two lives.

Thus emboldened, Boule entered the Rocknes' travel trailer carrying a .38 caliber revolver earlier supplied by appellant. Boule told the Rocknes that he and appellant "needed [their] services for a couple days to get across the state lines." An aggravated appellant urged Boule to proceed with the Rocknes' execution: "You know, we have got to do what we planned to do." Brusquely, appellant loaded her belongings and Boule's into the Rocknes' travel trailer, casually destroying cherished possessions of the older couple in the process. When Boule asked appellant to be careful with the Rocknes' belongings, her reply mirrored her profane resolve: "F— their stuff."

Appellant then pulled a revolver out of her waistband, terrifying the Rocknes by icily pointing the gun at one, then the other, while Boule went to check the truck. Boule returned, handcuffing Mr. and Mrs. Rocknes' hands behind their backs and to the chairs in which they were sitting and tying the handcuffs together with some nylon cord which he also used to tie Mr. Rockne's legs to his chair. As their captors drove the truck and trailer down the interstate, Mr. and Mrs. Rockne, both convinced they were about to die, managed to loosen the nylon cord between them, careful to appear still trussed should their captors check. Boule came back to the trailer and taped the Rocknes' mouths, telling them they were coming to a town.

After a few more miles, Boule came back and told the Rocknes that appellant was buying groceries and they would be rolling again soon, warning that he was standing guard just outside the trailer. By that time, Mrs. Rockne had surreptitiously broken the chair to which she was cuffed and slipped her bonds, except for the handcuffs. Fearing that they were being closely guarded when stopped, Mr. and Mrs. Rockne determined that the only chance would be for Mrs. Rockne to jump from the trailer when it once again began to move.

Mindful of the harrowing dangers associated with an awkward escape from a moving vehicle onto a roadway crowded with summer tourists, Mrs. Rockne decided that the more virulent threat lay with doing nothing and silently slipped from the trailer when it again began to move. Hands cuffed behind her, Mrs. Rockne hit the roadway with such force that she fractured her pelvis, the humerus in her left arm and a number of ribs, not to mention suffering contusions and abrasions including "this horrible, black purple eye[.]" Fighting to maintain consciousness, Mrs. Rockne repeatedly and insistently informed those who came to her aid of her husband's continuing peril.

An hour-long chase ensued on I–90 heading from Buffalo, Wyoming toward the Montana border. Before appellant and Boule were run to ground, pursuing officers passing the truck observed appellant laughing at them, then smiling and waving—seemingly oblivious to the plight of her victims.

Convicted on two counts each of aggravated assault and battery, aggravated robbery, and kidnapping along with a single count of conspiracy to commit kidnapping, appellant complains that the double jeopardy clause of the state and federal constitutions require all convictions, save the conspiracy, to merge into one offense for purposes of sentencing.

### III. STANDARD OF REVIEW

The doctrine of merger embodies that aspect of constitutional assurances

against exposure to double jeopardy which precludes alternative legislative proscriptions of a single offense. *Duffy v. State*, 789 P.2d 821, 825–27 (Wyo.1990). If elements of two charged offenses are identical or if the elements of one charged offense constitute an indispensable subset of elements requisite to conviction of a second offense, a trial court cannot lawfully impose separate sentences upon conviction of both. *Vena v. State*, 941 P.2d 33, 40 (Wyo.1997) (*quoting DeSpain v. State*, 865 P.2d 584, 589 (Wyo.1993)). If, on the other hand, this "statutory elements" test reveals disparate component parts to the two charged offenses, it may be presumed that the legislature intended separate or cumulative punishments upon convictions of both. *Vena*, 941 P.2d at 40. Under such circumstances, the fact that a continuing course of conduct engendered several charges creates no impediment to multiple convictions and sentences. *McClellan v. State*, 933 P.2d 461, 466 (Wyo.1997); *Rivera v. State*, 840 P.2d 933, 943 (Wyo.1992).

The statutory elements test is derived from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) and is susceptible to a more succinct statement:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*State v. Keffer*, 860 P.2d 1118, 1130 (Wyo. 1993) (*quoting Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). At the threshold, appellate resort to the statutory elements test in order to resolve the issue of merger would appear to be a pure question of law calling for *de novo* review of the trial court's conclusions. *City of Laramie v. Hysong*, 808 P.2d 199, 202 (Wyo.1991); *McGinnis v. State*, 17 Wyo. 106, 113–14, 96 P. 525, 526–27 (1908). Such an analysis may indeed suffice when the question of merger concerns the entitlement of the State to charge a defendant with separate crimes and have each charge submitted to the jury. *Owen v. State*, 902 P.2d 190, 195 (Wyo.1995).

■ The question of merger as a bar to multiple *sentences* for the same act, however, summons a more complex appellate standard of review. As a practical matter, in appeals alleging imposition of multiple sentences for a single act, the focus necessarily expands to embrace those facts proven at trial. The ultimate question becomes whether those facts reveal a single criminal act or multiple and distinct offenses against the victim or victims and hence the State. *Owen*, 902 P.2d at 193 (*quoting Rivera*, 840 P.2d at 944 and *Com. v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777, 779–80 (1985)).

■ *Owen* and *Rivera* contemplate multiple charges where guilt of charge A "was a part of and necessary to, the accomplishment" of charge B. *Rivera*, 840 P.2d at 943 (*quoted in Owen*, 902 P.2d at 194). For example, Mr. Rivera was convicted of indecent liberties with a minor for pulling down his victim's blue jeans and panties, but was also convicted of first-degree sexual assault for the subsequent penetration of the same victim. Since the act of committing indecent liberties was a *necessary and indispensable* precursor to the sexual assault, we held that the offenses merged for purposes of sentencing. *Rivera*, 840 P.2d at 944. Restated, our rule is that when the facts show that the defendant's act in violation of crime B could not have been accomplished in any way other than through prior violation of crime A, the two charges *must* merge for purposes of sentencing. *Owen*, 902 P.2d at 194–95. Such a merger is mandatory only when the facts necessary to prove charge A describe the only possible way in which crime B may be committed.

## IV. DISCUSSION

■ Having wisely abandoned any notion of establishing a case for merger through a *Blockburger* comparison of the manifestly disparate elements of aggravated assault, kidnapping, and aggravated robbery, appellant theorizes that the doctrine of merger should nevertheless deliver her from multiple sentences because an element, in fact, requisite to the proof of each offense was her display of a drawn deadly weapon.

To be sure, appellant's act of drawing a revolver from her waistband and pointing it menacingly at each of the Rocknes satisfied a key element of aggravated assault proscribed by Wyo. Stat. § 6–2–502(a)(iii) (1997) and defined for the jury by Instructions No. 14 and No. 15 as "[t]hreaten[ing] to use a drawn deadly weapon upon [each victim]."

A finding of guilt for the aggravated robbery of the Rocknes, by contrast, required findings that appellant "exhibited" a deadly weapon and did so "[i]n the course of committing a Robbery upon [each victim]" contrary to Wyo. Stat. § 6–2–401 (1997). Patently, each of the foregoing crimes require, and in this case was proven to contain, an element not necessary to the other, satisfying the *Blockburger* test and signifying the legislature's decision that one may commit two separate and distinct crimes by threateningly pointing a pistol at someone and exhibiting that same pistol to facilitate a robbery. *DeSpain*, 865 P.2d at 590. Assuming, arguendo, that such was not the case, the State also clearly established that the pistol was not the only deadly weapon *exhibited* by appellant:

> [Mr. Rockne] She brought in a shotgun, which appeared to me from where I was sitting to have had the barrel sawed off. This alarmed me a great deal. I won't forget that.

> [Mrs. Rockne] She turned and went back outside again and came back with some more. And in this bundle there was like a stick in the air, and it had a blue denim jacket over it. And she took it off and there was some kind of shotgun.

Whether employing her handgun for the disparate purposes of "threatening to use" it in two aggravated assaults and "exhibiting" it in two aggravated robberies, or "exhibiting" a shotgun in facilitation of two aggravated robberies, appellant's proven conduct confirms a *de novo* review of the statutes and not only permits but virtually demands separate sentences for her separate crimes.

■ Finally, Wyo. Stat. § 6–2–201 (1997), as applied to appellant, required proof that she "[b]y force, threat or deception" "remove[d] [each victim] from the vicinity where [the victim] was at the time of the removal * * *." Clearly, removal of the victim is an element unique to kidnapping in contrast to the other crimes charged. Just as patently, appellant's employment of her pistol to aid in handcuffing and binding the victims constituted only one of the almost innumerable ways in which "force, threat or deception" might be used to facilitate kidnapping.

While one manner or proving one element of each of the three offenses may be to demonstrate that appellant trained her revolver on each of the victims, such is far from the only means by which each crime could have been perpetrated, as manifested by the State's proof of alternative means employed by appellant in the commission of each crime. Furthermore, the State amply established elements of each offense which were not requisite to a finding of guilt on the other charges. We hold, under the facts firmly established during the trial of this case, that the crimes of aggravated assault and battery, aggravated robbery, and kidnapping may not, should not and do not merge for sentencing purposes.

In reliance upon language in *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993), the State inveigles upon us to critically revisit our call for the "one criminal act" factual analysis articulated in *Rivera* and *Owen*, when the issue, as in the instant case, is merger for sentencing purposes. In *Dixon*, a badly splintered United States Supreme Court approved imposition of separate sentences for a conviction of a specific crime (possession of cocaine), as well as the violation of probation based on the same crime. The inability of the *Dixon* court to march to a single drummer is less dispositive of the State's invitation than our ability to readily distinguish appellant's numerous proven criminal acts in the instant case from Mr. Dixon's apparent single act. Such a clear factual distinction requires us to defer consideration of *Dixon* to another, more appropriate, day.

## V. CONCLUSION

Appellant wanted Mr. and Mrs. Rockne dead and their lifeless bodies concealed in the undergrowth of some remote ditch. That her desire failed to find fruition was all about

the courage and resourcefulness of Mr. and Mrs. Rockne and no thanks to appellant's depraved heart. Reasonable minds cannot differ as to the inapplicability of sentence merger to appellant's manifold crimes against the Rocknes and the peace and dignity of the State of Wyoming. Sentient minds are left only to wonder whether any sentence or combination of sentences could truly fit the crimes of which appellant was rightly convicted. The judgment and sentence of the district court is affirmed in all respects.