2005 WY 163

**Richard Paul MEYERS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 04–223.

Supreme Court of Wyoming.

Dec. 22, 2005.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Matthew D. Obrecht, Student Intern.

Before HILL, C.J., and GOLDEN, VOIGT, BURKE, JJ., and ARNOLD, D.J.

BURKE, Justice.

[¶ 1] Richard P. Meyers challenges his conviction for attempted voluntary manslaughter. Mr. Meyers claims his rights under the double jeopardy provisions of both the United States and Wyoming Constitutions were violated. Mr. Meyers also claims the district court considered improper evidence during sentencing. We affirm.

### ISSUES

[¶ 2] Mr. Meyers submits the following issues for review:

I. Whether double jeopardy prohibited the district court from entering a judgment and sentence against [Mr. Meyers] for voluntary manslaughter.

II. Whether the district court abused its discretion when it allowed the victim to present to the court a written and oral victim impact statement.

### FACTS

[¶ 3] On March 22, 2002, Trooper Jason Green of the Wyoming Highway Patrol responded to a call for a motorist in need of assistance on Interstate 80 in Carbon County. Trooper Green observed a vehicle on the side of the road with its four-way flashers activated. No occupants were in the vehicle, but the passenger door was ajar. Alcohol containers were in plain view and contents from the car were on the ground next to the open door. As Trooper Green continued with his investigation, Mr. Meyers arrived at the scene. Trooper Green initiated contact and grew concerned that Mr. Meyers was

intoxicated. He asked Mr. Meyers to accompany him to his patrol car. Trooper Green advised of his intention to conduct a pat-down search. Mr. Meyers informed Trooper Green that he had knives and a gun in his pocket. Trooper Green ordered Mr. Meyers to place his hands on the hood of the patrol car. Mr. Meyers initially complied, but, as Trooper Green approached him, Mr. Meyers stated that he would not relinquish his gun. He then pulled the gun from his pocket. Trooper Green responded by retreating to a safer position and drawing his weapon. Mr. Meyers began shooting at Trooper Green. Trooper Green returned fire. The confrontation ended when Mr. Meyers fled the scene. He was apprehended in Ogden, Utah the following day. Neither party was injured in the incident.

[¶ 4] Mr. Meyers was charged with one count of felony interference with a peace officer[1] and one count of attempted first degree murder.[2] He pled not guilty to both counts. A trial was held. Prior to deliberations, the jury was instructed that it could find Mr. Meyers guilty of the lesser included offense of attempted second degree murder.[3] On March 7, 2003, the jury returned a verdict of guilty on the charge of felony interference with a peace officer, but found Mr. Meyers not guilty of attempted first degree murder. The jury deadlocked on the lesser included offense of attempted second degree

murder. The district court accepted the verdicts and declared a mistrial on the charge of attempted second degree murder.

[¶ 5] A new trial date was set on the charge of attempted second degree murder. Mr. Meyers filed a motion to dismiss claiming a retrial on the charge would violate both the due process and the double jeopardy provisions of the United States and Wyoming Constitutions. The district court denied the motion. The second trial commenced on November 3, 2003. On the second day of deliberations the jury indicated it was deadlocked. The district court again declared a mistrial and dismissed the jury.

[¶ 6] The State requested a new trial date on the same charge. Trial was scheduled for April 6, 2004. Mr. Meyers again filed a motion to dismiss based upon double jeopardy and the court's inherent power to dismiss the charge in the interest of justice. The district court, after hearing, denied the motion.

[¶ 7] On March 22, 2004, pursuant to a plea agreement, Mr. Meyers entered a plea of *nolo contendere* to attempted voluntary manslaughter.[4] The district court accepted the plea. Mr. Meyers was sentenced to a single term of imprisonment of 18 to 20 years with credit for 788 days. This appeal followed.

---

1. Felony interference with a peace officer is defined by Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2001) as:

 (b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

2. Wyo. Stat. Ann. § 6–2–101(a) (LexisNexis 2001) defines first degree murder as:

 (a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, ... resisting arrest, ..., kills any human being is guilty of murder in the first degree.

3. Murder in the second degree is defined by Wyo. Stat. Ann. § 6–2–104 (LexisNexis 2001). It states:

 Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree,....

The attempt element of both first degree and second degree murder is defined by Wyo. Stat. Ann. § 6–1–301(a)(i) (LexisNexis 2001):

 (a) A person is guilty of an attempt to commit a crime if:
 (i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

4. Voluntary manslaughter is defined by Wyo. Stat. Ann. § 6–2–105(a)(i) (LexisNexis 2001) which states:

 (a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, ...:
 (i) Voluntarily, upon a sudden heat of passion; ...

The attempt element of voluntary manslaughter is defined by Wyo. Stat. Ann. § 6–1–301(a)(i).

## DISCUSSION

 [¶ 8] In his first claim of error, Mr. Meyers alleges a violation of the double jeopardy provisions of the United States and Wyoming Constitutions. The Fifth Amendment of the United States Constitution and Article 1, Section 11 of the Wyoming Constitution guarantee that a person will not be placed twice in jeopardy for the same criminal offense. The Fifth Amendment to the United States Constitution guarantees that no "person be subject for the same offense to be twice put in jeopardy of life or limb...." The Wyoming Constitution contains a similar provision in Article 1, Section 11 which states:

> No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

We have previously recognized that "[a]lthough the federal and [the] Wyoming double jeopardy clauses are dissimilar in language, they have the same meaning and are coextensive in application." *Longstreth v. State*, 890 P.2d 551, 553 (Wyo.1995). We review claims alleging violations of a constitutional right under our *de novo* standard of review. *Strickland v. State*, 2004 WY 91, ¶ 40, 94 P.3d 1034, 1051 (Wyo.2004).

 [¶ 9] The double jeopardy provisions of both Constitutions provide an accused three protections: 1) protection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense. *Pope v. State*, 2002 WY 9, ¶ 14, 38 P.3d 1069, 1072 (Wyo.2002). Mr. Meyers has failed to establish a violation of any of these protections.

 [¶ 10] Mr. Meyers was convicted of felony interference with a peace officer. He was never acquitted, or convicted, of attempted second degree murder. Mr. Meyers concedes that the offenses of felony interference with a peace officer and attempted second degree murder encompass separate and distinct statutory elements and that the State could properly bring both charges against him.[5] Mr. Meyers concedes that he did not receive multiple punishments for the same offense. He acknowledges that his convictions were properly merged for the purposes of sentencing. *See Owen v. State*, 902 P.2d 190, 195 (Wyo.1995); *Vigil v. State*, 563 P.2d 1344, 1354 (Wyo.1977). He also acknowledges that a retrial following a hung jury does not violate principles of double jeopardy. *Richardson v. United States*, 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242 (1984); *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165, 166 (1824). As was noted by the U.S. Supreme Court, "without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona*, 434 U.S. at 509, 98 S.Ct. at 832.

[¶ 11] In reality, Mr. Meyers does not assert a constitutional double jeopardy violation in his first claim of error. Rather, he urges us

> to adopt a rule of law, consistent with the Double Jeopardy Clause, which would bar prosecution of a defendant following a trial where the jury is deadlocked on one count, but has reached a decision on the other count, where the count which has been decided and the retrial on the deadlocked count would merely result in a conviction for merged sentences.

---

5. The *Blockburger* test is used to analyze claims that a person has been prosecuted twice for the same offense and is articulated as follows: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). We adopted the *Blockburger* test in *State v. Keffer*, 860 P.2d 1118, 1131 (Wyo.1993).

Although unclear from his appellate brief, Mr. Meyers appears to rely upon a Tennessee decision, *State v. Witt,* 572 S.W.2d 913 (Tenn.1978), to support his position. In *Witt,* the trial court dismissed first degree murder charges against the defendant after three mistrials had been declared because of deadlocked juries. The State appealed. The Tennessee Supreme Court, after specifically recognizing that double jeopardy protection was not implicated, upheld the dismissal on the basis that:

> ... trial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where ... repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and that the probability of continued hung juries is great.

*Id.* at 917.

[¶ 12] In his motion to dismiss, Mr. Meyers cited *Witt* contending that the district court possessed inherent authority to terminate his prosecution. The district court denied the motion stating in its decision letter:

> It is unlikely that the evidence to be admitted at the third trial will differ significantly from the first two trials (at least insofar as the only remaining charge). Two juries have deadlocked to date. The Court cannot be certain of the reasons for the hung juries except that it appears the juries disagreed as to Defendant's intent. The previous trials have been fair. Defendant's remaining charge, [attempted] second-degree murder of a Wyoming State Trooper, is quite serious. Defendant was, at one time, appointed a public defender but now has retained private counsel, resulting in increased costs to him of another trial. However, the costs to society of dismissing the case, at this point outweigh the costs of retrial, even though the costs of retrial are significant. Finally, given the seriousness of the charges and the circumstances of the alleged crime, public perception in the justice system would be strengthened by allowing this case to proceed. At this point, the Court concludes

that the interests of justice require the case to proceed to a third jury trial.

(Footnote omitted.)

[¶ 13] On appeal, Mr. Meyers has not challenged the district court's denial of his motion. He has not alleged the district court abused its discretion. Instead, he attempts to prevail on appeal by mischaracterizing his "inherent authority" claim as a "double jeopardy" claim. The Tennessee court rejected this approach noting that multiple trials following a hung jury cannot be accurately labeled double jeopardy. *Witt,* 572 S.W.2d at 917. Additionally, the court noted:

> The sound judicial discretion of a trial judge to terminate a criminal prosecution is a power that ought to be used with the greatest caution and only in the most urgent circumstances and for very plain and obvious causes, ... with respect to the discretion to be exercised in finding manifest necessity for the declaration of a mistrial.

*Id.* We have not had previous occasion to address the "inherent authority" issue confronted by the Tennessee Supreme Court in *Witt* and need not determine that issue here. In this case, the district court proceeded as if it had the inherent authority to dismiss the charge but declined to do so and provided a well-reasoned explanation for its decision. We find no error in the district court's denial of the motion to dismiss.

[¶ 14] Additionally, we note that Mr. Meyers waived all nonjurisdictional defenses when he entered his unconditional *nolo contendere* plea:

> A criminal defendant, by pleading guilty, admits all of the essential elements of the crime charged and thus waives all nonjurisdictional defenses. A plea of nolo contendere has the same effect as a guilty plea. Therefore, when a criminal defendant pleads nolo contendere, he or she waives all nonjurisdictional defenses and objections.

> We have said that jurisdictional defenses and objections involve:

>> "[T]he very power of the state to bring the defendant into court to answer the charge against him." Jurisdictional de-

fects include: unconstitutionality of the statute defining the crime pled to, failure of the indictment or information to state an offense, and double jeopardy.

In other words, a criminal defendant may, after pleading guilty or nolo contendere, attack a defect only if it involves "attributes of jurisdiction." Nonjurisdictional defenses and objections are those "objections and defenses which would not prevent a trial."

*Ochoa v. State*, 848 P.2d 1359, 1361–62 (Wyo. 1993) (internal citations omitted). Mr. Meyers' inherent authority claim is not properly a double jeopardy claim or a jurisdictional claim which survives the entry of his plea.

[¶ 15] Next, Mr. Meyers challenges the sentencing procedure and sentence. His claim of error relates to the victim impact statements offered by Trooper Green. Trooper Green submitted a written victim impact statement which was included in the presentence report. He was also permitted to make an oral statement at the sentencing hearing. Mr. Meyers contends that the district court erred in considering both statements and was unduly influenced by Trooper Green's input. He claims prejudice is demonstrated by the fact that he received the maximum sentence for his crime.[6]

[¶ 16] We review sentencing decisions under our abuse of discretion standard:

"Sentencing decisions are normally within the discretion of the trial court. A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. The party who is appealing bears the burden to establish that an error was prejudicial."

**6.** Mr. Meyers was sentenced to a term of imprisonment of 18 to 20 years. The crime of manslaughter carries a maximum prison sentence of

*Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003) (internal citations and quotation marks omitted). Because Mr. Meyers failed to object during the sentencing hearing, our review is limited to a search for plain error:

"First, the record must be clear as to the incident which is alleged as error. Second, the party claiming the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove a substantial right has been denied him and, as a result, he has been materially prejudiced."

*Wilks v. State*, 2002 WY 100, ¶ 7, 49 P.3d 975, 981 (Wyo.2002).

[¶ 17] Mr. Meyers contends that a victim is entitled to submit a written impact statement or make an oral statement to the court, but is not entitled to offer more than one statement. Mr. Meyers relies solely on Wyo. Stat. Ann. § 7–21–102(a)(iii) (LexisNexis 2001) to support his contention that a clear and unequivocal rule of law was violated. His reliance is misplaced. Wyo. Stat. Ann. § 7–21–102(a)(iii) states:

§ 7–21–102. *Notice to crime victims.*

(a) If a defendant is convicted of a crime involving an identifiable victim, the district attorney, upon and in accordance with the request of the victim, shall give to the victim notice of the following:

. . .

(iii) The victim's opportunity to make a written or oral impact statement for use in the preparation of the presentence investigation report concerning the defendant when a presentence investigation report is to be prepared[.]

[¶ 18] Our rules concerning statutory interpretation are well established. Words of a statute are to be given their plain and ordinary meaning. *Keene v. State*, 812 P.2d 147, 150 (Wyo.1991). If the language is clear and unambiguous, effect must be given to the plain meaning of the statute. *Abeyta v. State*, 2002 WY 44, ¶ 9, 42 P.3d 1009, 1011 (Wyo.2002).

20 years. Wyo. Stat. Ann. § 6–2–105(b) (LexisNexis 2001).

[¶ 19] The language of the statute cited by Mr. Meyers is clear and unambiguous. It relates to notice which a district attorney must provide to a crime victim of his opportunity to make a victim impact statement for inclusion in the presentence report. By its terms, the statute does not limit a victim's right to also make an oral statement to the court. In fact, Wyo. Stat. Ann. § 7–21–102(a)(vi) (LexisNexis 2001) requires that the victim shall also be given notice of his "opportunity to make an impact statement at sentencing ..." Mr. Meyers has failed to establish a violation of a clear and unequivocal rule of law.

[¶ 20] Although not raised by Mr. Meyers, we note that Wyo. Stat. Ann. § 7–21–103 (LexisNexis 2003), as it existed at the time of Mr. Meyers' sentencing, appears to limit a crime victim to either the submission of a written statement for inclusion in the presentence report or an oral statement to the court.[7] The statute, however, also specifies that "[a]ny failure to comply with the terms of this chapter shall not create a cause for appeal or reduction of sentence for the defendant, . . . ." Wyo. Stat. Ann. § 7–21–103(c).

[¶ 21] Assuming *arguendo* that the district court erred pursuant to Wyo. Stat. Ann. § 7–21–103 in considering both a written and oral submission and that Mr. Meyers' appeal on such issue was not barred by Wyo. Stat. Ann. § 7–21–103(c), in order to prevail on such issue, Mr. Meyers is also required to establish that he was prejudiced by such error. He has failed to meet that burden.

[¶ 22] In its oral pronouncement, the district court set forth its reasoning for the length of the sentence imposed. In doing so, the district court focused primarily upon Mr. Meyers' extensive criminal record and the dangerous situation created by Mr. Meyers' conduct. The court stated:

> Well, initially I want to make it clear that this Court's extremely aware of the facts of this case and the circumstances that surrounded this event ... will guide me to impose what I feel is a proper sentence. Obviously, the State and the Defense disagree in interpreting those facts as to what they are, vis-a-vis, an appropriate sentence.
>
> The Court has listened to both the Defendant and the trooper, but will utilize my knowledge of the—my interpretation of the events as I saw and heard them during two trials. The Court's extremely aware of the evidence in this case and will rely on its own interpretation of the facts and circumstances in imposing this sentence.
>
> . . .
>
> Well, the Court recognizes that the law requires this Court to consider probation and make a finding why it should not be granted.
>
> The Court finds that probation should ... not be granted, first of all, the prior criminal record that has been discussed and is in the presentence investigation, even—
>
> . . .
>
> But the prior criminal record, even taking into account the corrections that the Defendant wished placed on it and the interpretation that [defense counsel] argued should be given to this record. So the Court, in disregarding minor offenses, dismissals and the corrections that were made, I find that this record on its face demonstrates an extreme record and dem-

---

7. Wyo. Stat. Ann. § 7–21–103 (LexisNexis 2003) states in pertinent part:

§ 7–21–103. *Submission of victim impact statement to sentencing court.*
(a) Prior to imposition of sentence or any correction or reduction of sentence in a felony case, an identifiable victim of the crime may submit a victim impact statement to the court:
 (i) By appearing, with or without counsel, to present an oral victim impact statement at the sentencing hearing or at any subsequent hearing for correction or reduction of sentence; or

 (ii) By submitting a written victim impact statement to the department of corrections, which shall be appended to the presentence report of the defendant, or by submitting a written statement to the court in the case of any subsequent hearing for correction or reduction of sentence.
Wyo. Stat. Ann. § 7–21–103 was amended in 2005 and now states:
 (a) At any hearing to determine, correct or reduce a sentence, an identifiable victim of the crime may submit, orally, in writing or both, a victim impact statement to the court.

onstrates dangerous behavior over a long period of time, which obviously culminated here in this most extreme event imaginable, although it did not cause death or injury to the officer or other motorists on the interstate in Carbon County, the record indicates obviously good cause for probation to not be granted.

Also, this attempted manslaughter, in the Court's opinion, represented one of the most serious and egregious events imaginable.

The Court has weighed, as the Defense has argued, the Defendant's version and the possible mitigation.

. . .

[T]he Court independently, in imposing this sentence, considered the extreme danger to Trooper Green that night, and it was inexcusable. And the Court, by this sentence, will hopefully encourage a general deterrent to other people to not present that danger to other law enforcement [offi-cers] who are engaged in just trying to perform their duties. There is no excuse for them to be exposed, as this officer was.

Nothing contained in the district court's pronouncement supports Mr. Meyers' contention that the court was unduly influenced by Trooper Green's statements. The sentencing judge properly considered Mr. Meyers' criminal history and, because he presided over the two trials held in this case, was fully aware of the facts and circumstances surrounding Mr. Meyers' conviction. We find no prejudicial error in the sentencing process or abuse of discretion in the sentence imposed.

[¶ 23] Affirmed.