2012 WY 35

**Gary Allen JAMES, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–11–0158.

Supreme Court of Wyoming.

March 9, 2012.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; and Kirk A. Morgan, Assistant Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Deputy Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]  Gary Allen James was convicted of two counts of aggravated assault and battery and two counts of DUI with serious bodily injury.  The district court imposed four consecutive sentences, but James contends on appeal that the convictions should have merged to two convictions for sentencing purposes.  We affirm.

## ISSUE

[¶ 2]  James presents one issue for our consideration:

The district court erred when it imposed consecutive sentences in violation of [James'] constitutional right against multiple punishments for the same offense.

## FACTS

[¶ 3]  In the very early morning of April 15, 2010, James and three passengers headed from Centennial to Laramie on Wyoming Highway 130.  The four friends had spent the night partying in Centennial and also had shared a fifth of whiskey.

[¶ 4]  Because James was drunk and driving recklessly, he was unable to negotiate a curve near milepost 8 on Wyoming Highway 130.  The vehicle rolled twice and landed upright.  The road was dry and the weather was clear.

[¶ 5]  Two passengers were seriously injured when they were thrown from the vehicle, and both were life flighted to Colorado.  One suffered a crushed skull and a brain injury, and now must walk with the assistance of a cane.  The other's hip and leg bones were crushed, and his colon was bruised.  He is in a wheelchair and must wear a colostomy bag.  The third passenger was seat belted and walked away from the crash.  James also managed to walk away unscathed.

[¶ 6]  One of the officers that responded smelled alcohol and noticed James' bloodshot, watery eyes and slurred speech.  James told the officer that he and his friends were drunk.  After he was treated at the hospital, James was placed under arrest, as his blood alcohol content registered .195% the night before—almost 2½ times the legal limit of .08%.

[¶ 7]  The State charged James with two counts of DUI causing serious bodily injury in violation of Wyo. Stat. Ann. § 31–5–233(b)(i)(h)(i) (LexisNexis 2011), and two counts of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) or (ii) (LexisNexis 2011).  Habitual offender status was added in an amended information.  Initially, James pled not guilty to all four counts.  However, the parties reached a plea agreement, which provided as follows:

1) [James] will plead guilty to Count One, Count Two and Count Four as charged herein and no contest to Count Three as charged herein;

2) In exchange for the above plea of guilty, the State of Wyoming will remove the habitual offender allegation contained in the felony information filed herein;

3) There is no agreement as to sentencing in this matter.

[¶ 8] James pled as outlined above, and the court entered a Change of Plea. After receiving the presentence investigation report, the court held its sentencing. The district court sentenced James to four consecutive terms of eight to ten years of incarceration. James timely appealed.

## STANDARD OF REVIEW

[¶ 9] This Court reviews *de novo* the question of whether a defendant's constitutional protection against double jeopardy has been violated. *Daniel v. State*, 2008 WY 87, ¶ 7, 189 P.3d 859, 862 (Wyo.2008). We consider protections provided by the fifth amendment to the United States Constitution and by art. 1, § 11 of the Wyoming Constitution to be equivalent. *Id.*, ¶ 8, 189 P.3d at 862.

## DISCUSSION

[¶ 10] James contends on appeal that the district court violated his constitutional guarantees against double jeopardy by failing to merge, for sentencing purposes, the DUI and aggravated assault and battery counts relating to each victim. He argues that the merger doctrine required the district court to sentence him for only two crimes, not four, because there were only two victims.

[¶ 11] The State responds that while the evidence it would have used at trial to convict James of DUI and aggravated assault and battery charges would have overlapped somewhat, those two crimes are separate and distinct offenses with different elements. Thus, the district court properly ordered James to serve consecutive sentences on each count for which he was convicted. We agree with the State.

[¶ 12] The double jeopardy provisions of both the United States and Wyoming constitutions afford to individuals three distinct protections:

1) [P]rotection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense.

*Meyers v. State*, 2005 WY 163, ¶ 9, 124 P.3d 710, 714 (Wyo.2005). Here, we are focused on the third protection, about which we recently stated:

Federal double jeopardy law appears to have been settled in *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993), with the Supreme Court's holding that "[i]n both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." The inquiry under the same-elements test is "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* Like the United States Supreme Court, this Court recognizes and follows the same-elements test. *See, e.g., Granzer v. State*, 2010 WY 130, ¶ 13, 239 P.3d 640, 645 (Wyo.2010); *Snow v. State*, 2009 WY 117, ¶ 16, 216 P.3d 505, 510 (Wyo.2009); and *Najera v. State*, 2009 WY 105, ¶ 11, 214 P.3d 990, 994 (Wyo.2009).

*Rathbun v. State*, 2011 WY 116, ¶ 6, 257 P.3d 29, 32 (Wyo.2011).

[¶ 13] The same-elements test, also known as the statutory elements test, mentioned in *Rathbun*, is derived from *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*State v. Keffer*, 860 P.2d 1118, 1130 (Wyo. 1993). In addition to the same-elements test, this Court has also considered a merger doctrine that allows for the consideration of other factors:

> The question of merger as a bar to multiple sentences for the same act, however, summons a more complex appellate standard of review. As a practical matter, in appeals alleging imposition of multiple sentences for a single act, the focus necessarily expands to embrace those facts proven at trial. The ultimate question becomes whether those facts reveal a single criminal act or multiple and distinct offenses against the victim or victims and hence the State.

*Bilderback v. State*, 13 P.3d 249, 254 (Wyo. 2000). Recently, the *Bilderback* style merger doctrine—considering the facts of the case—has faced some challenges. *See Najera v. State*, 2009 WY 105, ¶ 17, 214 P.3d 990, 995 (Wyo.2009) (Voigt, J., specially concurring). However, with or without a *Bilderback* fact analysis, the result in this case is the same: James committed two separate offenses against each victim.

[¶ 14] Even prior to *Bilderback*, another Wyoming case, *Nowack v. State*, 774 P.2d 561 (Wyo.1989), determined that multiple convictions and punishments may be had for aggravated assault and battery and DUI resulting in serious injury. We discussed this issue at length in *Nowack:*

> "Where independent but overlapping statutes are directed to separate evils, cumulative punishments are intended. *Birr* [*v. State*], 744 P.2d [1117] at 1121 [ (Wyo. 1987) ]; *Albernaz* [*v. U.S.*], 450 U.S. [333] at 343 [101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) ]." *Lauthern v. State*, 769 P.2d at 355. Both statutes are directed toward the prevention of bodily injury, however one statute protects against drunken drivers while the other protects against outrageous conduct, regardless of the actor's state of sobriety. Those are sufficiently separate purposes to trigger the inference of legislative intent to authorize cumulative punishments.

> . . . .

We are satisfied that the legislature contemplated two separate types of conduct in the statutes and intended cumulative punishments. In fact, we are persuaded that any other interpretation could not offer a sense of symmetry to the punishment scheme which most would regard as fair. To accept Nowack's argument that he could only be punished for the misdemeanor would render the absurd result the trial judge sought to avoid—that of punishing outrageous drunken driving less severely than the same outrageous driving by a sober person. Another alternative might be to leave the felony conviction to stand, but not both the felony and the misdemeanor. That approach treats the sober driver and the drunken driver the same, but it also frustrates the legislature's efforts in dealing with the problem of drunk drivers and ignores the legislature's purpose of reducing the carnage on our highways. [Footnote omitted.]

Being satisfied that the legislature intended cumulative punishments we could end our inquiry if we were considering multiple punishments imposed after a single trial. But legislative intent alone is insufficient to pass muster under the double jeopardy restriction upon successive trials for the same offense. That brings us to our task, which is to determine whether aggravated assault and battery is the same offense as injury causing D.W.U.I. The test for that determination has come to be the one announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) at [304]. [Footnote omitted.]

> . . . .

In this case application of the *Blockburger* test is straight forward—the two offenses are not the same. Even though both violations arose from the same incident and both have a common element (serious bodily injury caused by the defendant's conduct), each has an element not found in the other. The injury-producing D.W.U.I. requires proof of driving while intoxicated to a degree making him incapable of safely driving, an element missing from aggravated assault and battery. On the other hand, aggravated assault and

battery requires proof of an element not found ·in injury-producing D.W.U.I., that being reckless conduct "manifesting extreme indifference to the value of human life." [Footnote omitted.]

. . . .

We continue to adhere to traditional *Blockburger* analysis. *Lauthern v. State,* 769 P.2d 350 [ (Wyo.1989) ]; *State v. Carter,* 714 P.2d 1217 [ (Wyo.1986) ]. In comparing the two charged offenses we conclude that each requires proof of an element not necessary for proof of the other. The fact that evidence of driving under the influence was relied upon in the aggravated assault and battery trial is of no moment.[15] The defendant was not twice subjected to trial for the same offense.

---

[FOOTNOTE 15]: At trial the State presented proof of Nowack's intoxication as well as other evidence of erratic, dangerous, and irresponsible driving. Had the defendant been acquitted in a prior trial it may have been necessary to determine if *issues* had been determined in the first trial which, under principles of collateral estoppel, would be barred from relitigation. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). But the matter to be determined would be issue preclusion, not evidence preclusion. Even if issues were barred from relitigation that does not mean the State would necessarily be precluded from again presenting the same facts. Those facts would be properly admissible if they were probative of issues not fully adjudicated. [Emphasis in original.]

*Id.* 774 P.2d at 567–72.

■ [¶ 15] Along these same lines, we have also noted that "[i]n appeals alleging imposition of multiple sentences for a single act, the focus is on those facts proven at trial." *Chapman v. State,* 2001 WY 25, ¶ 25, 18 P.3d 1164, 1174 (Wyo.2001) (quoting *Rouse v. State,* 966 P.2d 967, 970 (Wyo. 1998)). The ultimate question is whether those facts reveal a single criminal act or multiple distinct offenses against the victim(s). Where facts required for the commission of one offense are a necessary and indispensable precursor to commission of a second offense, the offenses are merged for purposes of sentencing. Such merger is mandatory where the second offense cannot be committed absent commission of the first offense. *Id.*

■ [¶ 16] With the aforementioned case law in mind, we initially note that like *Nowack,* the two statutes at issue here are "directed toward the prevention of bodily injury," but "one statute protects against drunken drivers while the other protects against outrageous conduct, regardless of the actor's state of sobriety." *Nowack,* 774 P.2d at 567. "Those are sufficiently separate purposes to trigger the inference of legislative intent to authorize cumulative punishments." *Id.* Each requires proof of an element not necessary for proof of the other.

[¶ 17] Turning to this case, because James pled guilty (or no contest), he seems to have conceded that both his reckless driving and his intoxication caused the accident and injuries. *See Olson v. State,* 698 P.2d 107, 115 (Wyo.1985) ("Proof of unsafe driving is not required although such is competent evidence to be considered with all of the other evidence in determining whether the driver is under the influence of intoxicating liquor to a degree that he is incapable of safely driving.").

[¶ 18] At James' change of plea hearing, the prosecutor provided the following factual basis in support of the charges:

PROSECUTOR: Specifically, what had happened, on the 14th day of April, 2010, Mr. James met up with Christopher Broderick, Christina Greenfield, and Jason Gonzales. They bought a fifth of whiskey from Foster's, a bar here in town. They proceeded to consume that fifth of whiskey through the evening. They all got into Mr. James' red Chevy Blazer, they drove out to Centennial, where they continued to party and drink alcohol.

They were driving back from Centennial to Laramie on Highway 130. They, again, were all in Mr. James' vehicle. He was driving. Ms. Greenfield was in the front passenger seat. Mr. Broderick was directly behind her in the rear passenger seat, and Mr. Gonzales was behind Mr. James in the driver's side passenger seat.

Mr. James was driving at the time erratically. He was swerving back and forth, according to Mr. Gonzales, flicking the

lights on and off. Mr. Broderick put his seatbelt on because he was getting concerned about Mr. James' behavior. Shortly thereafter, Mr. James' vehicle, the red Chevy Blazer, left the road on the left [sic] shoulder. He then overcorrected, went across both lanes of travel, crossed onto the right [sic] shoulder, at that point, left the roadway, rolling twice, and the vehicle landed on all four tires.

During the rolling, Ms. Greenfield was ejected. She was later taken to Ivinson Memorial Hospital and Air Lifted down to the Medical Center of the Rockies. She had both of her arms fractured, severe head trauma.

Mr. Gonzales was also thrown from the vehicle, taken to IMH later, and also Air Lifted down to the Medical Center of the Rockies. He had a fractured hip, dislocated hip, and bruising of the colon.

Upon arrival, Trooper Carol, deputies, and EMTs found Mr. James behind the steering wheel—I'm sorry—slumped over as they approached him as Mr. James being belligerent [sic] at the time, interfering with the care of Mr. Gonzales and Ms. Greenfield. He noticed that Mr. James' eyes were bloodshot and watery. He could smell the odor of alcohol coming from Mr. James. He asked Mr. James if he had consumed any alcohol, to which Mr. James responded that the group of them had consumed roughly a fifth of whiskey. Mr. James later had a blood draw taken from him at IMH was [sic] sent to the Wyoming Chemical Testing Lab, came back with results of a .17 percent blood alcohol concentration shortly after [sic] time of the wreck.

The effects on the victim in this matter, Jason Gonzales, who is not in the courtroom today, he is wheelchair-bound for the remainder of his life is the expectation. He also has to take [sic] use of a colonoscopy [sic] bag.

Ms. Greenfield, who is in the courtroom today, has to utilize a cane. She has scars on both of her arms from the surgery she had to undergo. She also has brain injury that is expected to last for the rest of her life.

[¶ 19] The factual basis provided evidence of James' intoxication, as well as other evidence of erratic, dangerous, and irresponsible driving. James' guilty plea to the separate offenses concedes that both his reckless driving and his intoxication caused the accident and injuries. *See Olson*, 698 P.2d at 115 ("Proof of unsafe driving is not required although such is competent evidence to be considered with all of the other evidence in determining whether the driver is under the influence of intoxicating liquor to a degree that he is incapable of safely driving."). James' intoxication resulted in his failure to manage the road's challenges, the eventual rollover, and ultimately his passengers' injuries. Independent of his otherwise reckless driving, James was guilty of causing serious bodily injury while under the influence of alcohol. Thus, we conclude that James committed two separate and distinct criminal acts against each of his two victims, and that the district court appropriately imposed consecutive sentences for those separate offenses. The district court is affirmed.

[¶ 20] Before we close, we must attend to one final matter. Although not addressed by the parties, it appears the State charged the aggravated assault matter under both a "serious bodily injury" and a "deadly weapon" theory. *See* § 6–2–502(a)(i) and (ii). From our review of the record, we cannot determine if the State selected a single theory, and contrary to W.R.Cr.P. 32(b)(2)(C), the Judgment and Sentence does not indicate either way. Rule 32(b)(2)(C) states in pertinent part that a judgment of conviction after a trial shall include "[a]n adjudication as to each offense including the name and statute number for each convicted offense and whether such offense is a felony or a misdemeanor." We therefore order that the Judgment and Sentence be corrected in this case to comply with Rule 32(b)(2)(C).

## CONCLUSION

[¶ 21] The convictions in this case should not have merged at sentencing, and the district court is affirmed.

VOIGT, J., files a special concurrence, in which GOLDEN, J., joins.

VOIGT, Justice, specially concurring, in which GOLDEN, Justice, joins.

[¶ 22]   I agree with the result reached in the majority opinion.   I write separately only to encourage this Court finally to abandon the fact or evidence approaches to the issue of merger and to adopt as our only standard the statutory elements test.   *See Winstead v. State*, 2011 WY 137, ¶ 16, 261 P.3d 743, 746 (Wyo.2011) (Voigt, J., specially concurring); *Baker v. State*, 2011 WY 123, ¶ 23, 260 P.3d 268, 274 (Wyo.2011) (Voigt, J., specially concurring);  and *Najera v. State*, 2009 WY 105, ¶ 17, 214 P.3d 990, 995 (Wyo.2009) (Voigt, C.J., specially concurring).   For too long, we have ignored the fact that the United States Supreme Court rejected the "conduct" or "evidence" test in favor of the statutory elements test by overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) in *United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993).   We should follow suit.