2002 WY 93

**STATE of Wyoming, Plaintiff,**

v.

**David John KING, Defendant.**

**No. 01–177.**

Supreme Court of Wyoming.

June 20, 2002.

Hoke MacMillan, Attorney General; Paul W. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Norman E. Young, Special Assistant Attorney General, Representing Plaintiff. Argument by Mr. Young.

David B. Hooper, Hooper Law Offices, P.C., Riverton, WY, Representing Defendant. Argument by Mr. Hooper.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] The State of Wyoming, acting through the Fremont County and Prosecuting Attorney, charged David John King, the Fremont County Sheriff, with three drug-related crimes. At his arraignment, King entered a plea of guilty[1] to two of the three charges (Counts 1 and 3). Thereafter, King filed a motion to dismiss the third charge (Count 2) on the basis of double jeopardy. The district court granted the motion. The State took exceptions[2] to that ruling, and this Court allowed its filing. Hence, we render the following decision on the point presented which shall govern in any similar case which may be pending at the time this deci-

---

1. Based on the transcript of the arraignment, it would appear that the guilty pleas came as a surprise to the prosecutor. No plea agreement was arranged before arraignment, and the guilty pleas appear to have been a defense tactic designed to precipitate the double jeopardy issue we discuss today. *See* W.R.Cr.P. 11.

2. Wyo. Stat. Ann. § 7–12–102 (LexisNexis 2001) states:

   **§ 7–12–102. Right of district attorney to take exceptions; certification; rules.**

   The district attorney may take exceptions to any opinion or decision of the court made during the prosecution of a criminal case. Before being filed in the supreme court, the bill of exceptions shall be presented to the trial court which shall certify whether the contents of the bill are correct. If certified, the trial court shall sign the bill containing the exceptions and affix the seal of the court and the bill shall be made part of the record. The bill of exceptions shall be governed by rules as shall be promulgated by the Wyoming supreme court.

sion is rendered, as well as to all future such cases.

[¶ 2] We will hold that the district court erred in dismissing Count 2 under the circumstances of this case.

## ISSUES

[¶ 3] The State poses this as the issue:

Whether the trial court, relying on *Bilderback v. State*, 13 P.3d 249 (Wyo.2000), and having determined it was permissible for the State to charge [King] with obtaining possession of a controlled substance by unlawful means and felony possession of a controlled substance, and having further determined that the sentences for those offenses should merge, erred by then dismissing the charge of felony possession of a controlled substance on double jeopardy grounds.

King rephrases the issue thus:

Whether the trial court correctly applied *Bilderback v. State*, 13 P.3d 249 (Wyo. 2000), to dismiss Count II of the information on grounds of double jeopardy prior to sentencing [King] on Count I.

## FACTS

[¶ 4] At the time the events that underlie this case occurred, King was the Sheriff of Fremont County. In the early morning hours of May 28, 2000, King's wife called 911 to report that her husband was having difficulty breathing. An ambulance was dispatched, and King was transported to Lander Valley Hospital. He was later transported to a hospital in Billings, Montana. Upon his return from Billings, King reported to the County Attorney, as well as others, that cocaine and opiates were found in his blood in such concentrations that it was apparent King either had attempted suicide, or someone was trying to kill him. King asserted that he did not knowingly ingest such drugs. Based upon this information, an investigation was conducted. During the course of that investigation, King finally admitted to using cocaine that he illegally obtained from the evidence locker maintained in the Sheriff's Department, which is located in the Fremont County Courthouse in Lander. King also informed investigators that he had been prescribed a pain medication after shoulder surgery in January of 2000, and that he may have used some of the medication in May of 2000, which would account for the opiates found in his blood. King was aware that there were approximately 42 grams of cocaine in the evidence locker. His office received it from the United States Drug Enforcement Administration for purposes of canine training. During the week preceding Memorial Day weekend in 2000, King had been drinking heavily. He was also suffering from depression. On Thursday, May 25, 2000, King entered the evidence locker, removed a vial of cocaine, and took it home with him where he proceeded to "snort" it. Although King described the quality of the cocaine as "shitty," as it did not even make him high, he continued to use it for the next several days until he was in such a state of overdose that he required hospitalization. King also stated that he dumped all of the cocaine he had not used down the sink and that he dumped more of it than he had used.

[¶ 5] Based upon the results of the investigation, King was charged with three counts of drug-related crimes. In Count 1, King was charged with violating Wyo. Stat. Ann. § 35–7–1033(a)(iii) (LexisNexis 2001) (emphasis added):

**§ 35–7–1033. Unlawful acts; distribution; registration; possession; records; counterfeiting; punishment.**

(a) It is unlawful for any person knowingly or intentionally:

(i) To distribute as a registrant a controlled substance classified in Schedule I or II, except pursuant to an order form as required by W.S. 35–7–1029;

(ii) To use in the course of the manufacture or distribution of a controlled substance a registration number which is fictitious, revoked, suspended, or issued to another person;

(iii) **To acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge;**

(iv) To furnish false or fraudulent material information in, or omit any material information from, any application, report, or other document required to be kept or filed under this act, or any record required to be kept by this act; or

(v) To make, distribute, or possess any punch, die, plate, stone, or other thing designed to print, imprint, or reproduce the trademark, trade name, or other identifying mark, imprint, or device of another or any likeness of the foregoing upon any drug or container or labeling thereof so as to render the drug a counterfeit substance.

(b) Any person who violates this section is guilty of a crime and upon conviction **may be imprisoned for not more than five (5) years,** or fined not more than ten thousand dollars ($10,000.00), or both.

[¶ 6]   In Count 2, King was charged with violating Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 20001) (emphasis added):

§ 35–7–1031.   **Unlawful manufacture or delivery; counterfeit substance; unlawful possession.**

(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

(i) Methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not more than twenty-five thousand dollars ($25,000.00), or both;

(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;

(iii) A substance classified in Schedule IV, is guilty of a crime and upon conviction may be imprisoned for not more than two (2) years, fined not more than two thousand five hundred dollars ($2,500.00), or both;

(iv) A substance classified in Schedule V, is guilty of a crime and upon conviction may be imprisoned for not more than one (1) year, fined not more than one thousand dollars ($1,000.00), or both.

(b) Except as authorized by this act, it is unlawful for any person to create, deliver, or possess with intent to deliver, a counterfeit substance. Any person who violates this subsection with respect to:

(i) A counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, fined not more than twenty-five thousand dollars ($25,000.00), or both;

(ii) Any other counterfeit substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;

(iii) A counterfeit substance classified in Schedule IV, is guilty of a crime and upon conviction may be imprisoned for not more than two (2) years, fined not more than two thousand five hundred dollars ($2,500.00), or both;

(iv) A counterfeit substance classified in Schedule V, is guilty of a crime and upon conviction may be imprisoned for not more than one (1) year, fined not more than one thousand dollars ($1,000.00), or both.

(c) **It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:**

(i) And has in his possession a controlled substance in the amount set forth in this paragraph is guilty of a misdemeanor punishable by imprisonment for not more than twelve (12) months, a fine of not more than one thousand dollars

($1,000.00), or both. Any person convicted for a third or subsequent offense under this paragraph shall be imprisoned for a term not more than five (5) years, fined not more than five thousand dollars ($5,000.00), or both. For purposes of this paragraph, the amounts of a controlled substance are as follows:

(A) For a controlled substance in plant form, no more than three (3) ounces;

(B) For a controlled substance in liquid form, no more than three-tenths (³⁄₁₀) of a gram;

(C) For a controlled substance in powder or crystalline form, no more than three (3) grams;

(D) For a controlled substance in pill or capsule form, no more than three (3) grams;

(E) For a controlled substance in the form of cocaine-based "crack" cocaine, no more than five-tenths (⁵⁄₁₀) of a gram;

(F) For a controlled substance known as LSD (Lysergic acid diethylamide), no more than three-tenths (³⁄₁₀) of a gram.

**(ii) And has in his possession methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug in an amount greater than those set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than *seven (7) years,* a fine of not more than fifteen thousand dollars ($15,000.00), or both;**

(iii) And has in his possession any other controlled substance classified in Schedule I, II or III in an amount greater than set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than five (5) years, a fine of not more than ten thousand dollars ($10,000.00), or both;

(iv) And has in his possession a controlled substance classified in Schedule IV in an amount greater than set forth in paragraph (c)(i) of this section, is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand five hundred dollars ($2,500.00), or both;

(v) And has in his possession a controlled substance classified in Schedule V, is guilty of a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both.

(d) For purposes of determining the weights to be given the controlled substances under this section, the weights designated in this section shall include the weight of the controlled substance and the weight of any carrier element, cutting agent, diluting agent or any other substance excluding packaging material.

[¶ 7]  In Count 3, King was charged with violating Wyo. Stat. Ann. § 35-7-1039 (LexisNexis 2001) (emphasis added):

**§ 35-7-1039.  Person using or under influence of controlled substance.**

Any person who knowingly or intentionally uses or is under the influence of a controlled substance listed in Schedules I, II or III except when administered or prescribed by or under the direction of a licensed practitioner, shall be guilty of a misdemeanor and **shall be punished by imprisonment in the county jail not to exceed ninety (90) days or a fine not to exceed one hundred dollars ($100.00), or by both.**

[¶ 8]  Although three crimes were charged, the State concedes that only one continuous transaction was involved, *i.e.,* that without proper authority or purpose, King entered the evidence locker and removed cocaine (a felony punishable by up to five years in prison), possessed that cocaine (a felony punishable by up to seven years in prison), and used it (a misdemeanor punishable by up to 90 days in jail).

[¶ 9]  Before court proceedings got under way, District Judge Nancy Guthrie requested this Court to enter an order assigning District Judge (Ret.) Dan R. Spangler to preside in this matter, and this Court entered such an order on March 19, 2001. King appeared before Judge Spangler for arraignment on April 16, 2001. During those proceedings, Judge Spangler briefly explained the nature of the charges to King and the following exchange occurred:

THE COURT: Mr. Hooper, is your client ready to enter a plea at this time?

MR. HOOPER: He is, Your Honor. In fact, I would advise the Court that it's his intention to enter a guilty plea to Count I. And that being the case, it's our position that Count II essentially charges the same offense. It subjects him to double jeopardy, and Count II should be dismissed.

It would also be our intention to enter a guilty plea to Count III.

THE COURT: What is the State's position regarding Count II?

MR. YOUNG: Obviously, Your Honor, the State's position is that Count II charges a separate offense. It might be— it may be that those offenses merge for sentencing purposes.

But without doing the research, I would reserve opinion on that. But for the moment, we would argue that Count II charges a separate offense.

[¶ 10] The trial court then proceeded to accept King's pleas of guilty to Counts 1 and 3, and also took his plea of not guilty to Count 2. The district court also set a briefing schedule with respect to what effect the guilty pleas had on Count 2.

[¶ 11] By order entered on May 4, 2001, the district court accepted King's guilty pleas, and convictions were entered against King for those offenses. After reviewing the very minimal briefs filed by the parties, the district court issued a terse decision letter on May 30, 2001, in which it opined:

> This outcome is governed by the case of *Bilderback v. State*, 13 P.3d 249 (Wyo. 2000). As in that case, the facts here

reveal that there was a single criminal act and not multiple and distinct offenses. The supreme court's rule is that when the facts show that the act in violation of crime B could not have been accomplished in any way other than through prior violation of crime A, the two charges must merge for purposes of sentencing. Count I, obtaining a controlled substance in an unlawful manner, can only be accomplished by Count II, possessing a controlled substance.

By order entered on June 12, 2001, the district court dismissed Count 2 on the basis of double jeopardy.

[¶ 12] On July 31, 2001, the district court entered its judgment and sentence. On Count 1, King was sentenced to one to three years of imprisonment, which was suspended. No fine was imposed. On Count 3, a jail sentence of 90 days was imposed, which was suspended. No fine was imposed. King was placed on probation for a period of three years.

[¶ 13] On July 31, 2001, the Fremont County and Prosecuting Attorney filed a Bill of Exceptions to obtain review of the district court's decision to dismiss Count 2. The district court certified that the contents of the Bill were correct. The district court then signed the Bill and affixed the seal of the court to it, as required by statute. The Wyoming Attorney General filed his application [3] for permission to file the Bill of Exceptions with this Court on August 21, 2001. By order entered on August 28, 2001, this Court granted permission [4] for the Bill to be filed.

---

3. Wyo. Stat. Ann. § 7–12–103 (LexisNexis 2001) states:

> **§ 7–12–103. Filing of bill by attorney general in supreme court.**
> Following certification of a bill of exceptions by the trial court as provided by W.S. 7–12–102, the attorney general may apply to the supreme court for permission to file the bill for review and decision upon the points presented. If the supreme court allows the bill to be filed, the judge who presided at the trial in which the bill was taken shall appoint a competent attorney to argue the case against the state and shall fix a reasonable fee for his service to be paid out of the treasury of the county in which the bill was taken.

4. Wyo. Stat. Ann. § 7–12–104 (LexisNexis 2001) states:

> **§ 7–12–104. Decision of supreme court upon bill.**
> (a) If the bill of exceptions is allowed to be filed, the supreme court shall render a decision on each point presented.
> (b) The decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state, but shall not reverse nor in any manner affect the judgment of the court in the case in which the bill of exceptions was taken.

## STANDARD OF REVIEW

[¶ 14] The decision of the district court is a pure question of law, and so we review the question posed in the Bill of Exceptions *de novo,* affording no special deference to the decision reached by the district court.

[¶ 15] It is asserted by King that this prosecution invokes his rights under the principles of double jeopardy. The Fifth Amendment to the United States Constitution provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Wyoming Constitution, art. 1, § 11 provides:

No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

[¶ 16] We have recognized that these two constitutional provisions, though dissimilar in language, have the same meaning and are coextensive in application. *Vigil v. State,* 563 P.2d 1344, 1349–50 (Wyo.1977); *Amrein v. State,* 836 P.2d 862, 864 (Wyo.1992).

## DISCUSSION

[¶ 17] We embark on our analysis by noting that *Bilderback v. State,* 13 P.3d 249, 253–55 (Wyo.2000) is not dispositive of this case, though our discussion there does shed light on the general subject matter applicable to the resolution of this case and intimates

that a decision the opposite of that reached by the district court would have been more apt:

Mr. Bilderback next contends his constitutional right not to be twice placed in jeopardy was violated because the same act resulted in convictions and sentencing under two different statutes. We have repeatedly noted the three-fold impact of the double jeopardy clause. We have said it prohibits a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction,[5] and multiple punishments for the same offense. *Frenzel v. State,* 938 P.2d 867, 868 (Wyo.), cert. denied, 522 U.S. 959, 118 S.Ct. 388, 139 L.Ed.2d 303 (1997). In this case, we are concerned with only the third aspect of the protection against double jeopardy; that is, multiple punishments for the same offense and whether the two convictions should have merged for sentencing purposes. [Footnote added.]

The standard of review for determinations regarding the doctrine of merger was set forth in *Rouse v. State,* 966 P.2d 967, 969–70 (Wyo.1998) (some citations omitted):

The doctrine of merger embodies that aspect of constitutional assurances against exposure to double jeopardy which precludes alternative legislative proscriptions of a single offense. If elements of two charged offenses are identical or if the elements of one charged offense constitute an indispensable subset of elements requisite to conviction of a second offense, a trial court cannot lawfully impose separate sentences upon conviction of both. If, on the other hand, this "statutory elements" test reveals disparate component parts to the two charged offenses, it may be presumed that the legislature intended separate or cumulative punishments upon convictions of both. Under such circumstances, the fact that a continuing course of conduct engendered several charges creates no impediment to multiple convictions and sentences.

---

5. It is this aspect of double jeopardy that is at issue in the instant case.

The statutory elements test is derived from *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) and is susceptible to a more succinct statement:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*State v. Keffer,* 860 P.2d 1118, 1130 (Wyo.1993) (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). At the threshold, appellate resort to the statutory elements test in order to resolve the issue of merger would appear to be a pure question of law calling for de novo review of the trial court's conclusions. Such an analysis may indeed suffice when the question of merger concerns the entitlement of the State to charge a defendant with separate crimes and have each charge submitted to the jury.

The question of merger as a bar to multiple sentences for the same act, however, summons a more complex appellate standard of review. As a practical matter, in appeals alleging imposition of multiple sentences for a single act, the focus necessarily expands to embrace those facts proven at trial. The ultimate question becomes whether those facts reveal a single criminal act or multiple and distinct offenses against the victim or victims and hence the State.

*Owen* [*v. State,* 902 P.2d 190 (Wyo. 1995),] and *Rivera* [*v. State,* 840 P.2d 933 (Wyo.1992),] contemplate multiple charges where guilt of charge A "was a part of and necessary to, the accomplishment" of charge B. *Rivera,* 840 P.2d at 943 (quoted in *Owen,* 902 P.2d at 194). For example, Mr. Rivera was convicted of indecent liberties with a minor for pulling down his victim's blue jeans and panties, but was also convicted of first-degree sexual assault for the subsequent penetration of the same victim. Since the act of committing indecent liberties was a necessary and indispensable precursor to the sexual assault, we held that the offenses merged for purposes of sentencing. Restated, our rule is that when the facts show that the defendant's act in violation of crime B could not have been accomplished in any way other than through prior violation of crime A, the two charges must merge for purposes of sentencing. Such a merger is mandatory only when the facts necessary to prove charge A describe the only possible way in which crime B may be committed.

The statutes involved in Mr. Bilderback's two charges and convictions provide as follows:

Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

Section 6–2–104.

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

Section 6–1–301(a).

(a) A person who uses a firearm while committing a felony shall be imprisoned for not more than ten (10) years in addition to the punishment for the felony. For a second or subsequent conviction under this section a person shall be imprisoned for not more than twenty (20) years in addition to the punishment for the felony.

(b) Subsection (a) of this section does not apply to those felonies which include as an element of the crime the use or possession of a deadly weapon.

Wyo. Stat. Ann. § 6–8–101 (LEXIS 1999).

Under the statutory elements test alone, the two charges have different elements. The state argues that the test allows separate sentences and effect must be given to the legislature's intent to provide a separate punishment when a person uses a firearm while committing a felony. However, legislative intent cannot overcome the constitutional prohibition against double jeopardy. In addition, § 6–8–101(b) indicates the legislature did not intend additional punishment when the first felony has the use of the deadly weapon as one of its elements. Although attempted second-degree murder does not have that statutory element, under the facts of this case, Mr. Bilderback did not commit any other act which could have constituted attempted second-degree murder other than using the firearm. Our merger analysis does not end with the application of the statutory elements test.

Here, Mr. Bilderback does not argue that the state could not charge and the jury could not convict on both attempted second-degree murder and the use of a firearm while committing a felony. Instead, he claims those crimes must merge for sentencing under our precedent. A jury found Mr. Bilderback guilty of both attempted second-degree murder and using a firearm in the commission of a felony. The trial court sentenced him to a term of fifty years to life for the attempted second-degree murder and a term of nine to ten years for using a firearm while committing the attempted second-degree murder with the terms to be served consecutively. He contends the two charges were for the "same act" and, when he was given consecutive sentences for the two convictions, his right to not suffer double jeopardy for the same act was violated. Appellate review of that issue involves the in-depth factual analysis set forth above in *Rouse*.

It is undisputed that Mr. Bilderback's only act which caused him to be found guilty of attempted second-degree murder was the shooting of Officer Parkin. Obviously, under the facts in this record, that shooting could not have been accomplished without the use of the firearm. The state

presents a theoretical argument that not all attempted second-degree murder scenarios necessarily involve the use of a firearm, and this is certainly true. But that is not the correct analysis. We must carefully examine the facts of *this* case and determine whether *this* defendant's offenses under § 6–1–301(a)(i) and § 6–2–104 could have occurred without the defendant necessarily committing an offense under § 6–8–101(a). They could not. An apt description of the doctrine of merger of offenses for sentencing is found in *Commonwealth v. Whetstine*, 344 Pa.Super. 246, 496 A.2d 777 (1985), as that doctrine has been developed in Pennsylvania.

> In deciding whether offenses merge, the question is whether the offenses charged "necessarily involve" one another, or whether any additional facts are needed to prove additional offenses once the primary offense has been proven. In deciding merger questions, we focus not only on the similarity of the elements of the crimes, but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed but a single criminal act.
>
> Additionally, we note that analysis of merger claims traditionally has revolved around the concept of injury to the sovereign; in order to support the imposition of more than one sentence, it must be found that the defendant's conduct constituted more than one injury to the Commonwealth.

*Whetstine*, 496 A.2d at 779–80 (citations omitted).

**We hold the state was entitled to charge both offenses and it was entitled to have them presented to the jury. The state had no way of anticipating how the evidence would be perceived by a jury or what the jury's conclusion might be with respect to the charged offenses.** Once the jury convicted Mr. Bilderback of both charges, however, the charges merged for punishment purposes, and only one sentence should have been imposed. In the context of the *Whetstine* rationale, only one injury occurred to the state in

**404**

this instance. We, therefore, vacate the sentence for using a firearm in the commission of a felony. This acknowledges Mr. Bilderback's right not to be twice placed in jeopardy for the same offense and affords an adequate accommodation to the constitutional prohibitions.

(Emphasis added.)

[¶ 18] More directly to the point under the facts present here is the case of *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2541–42, 81 L.Ed.2d 425 (1984): [6]

The trial court's dismissal of these more serious charges did more than simply prevent the imposition of cumulative punishments; it halted completely the proceedings that ultimately would have led to a verdict of guilt or innocence on these more serious charges. Presumably the trial court, in the event of a guilty verdict on the more serious offenses, will have to confront the question of cumulative punishments as a matter of state law, but because of that court's ruling preventing even the trial of the mores serious offenses, that stage of the prosecution was never reached. While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.

Respondent urges, as an alternative basis for affirming the judgment of the Supreme Court of Ohio, that further prosecution of the counts which were dismissed would violate the double jeopardy prohibition against multiple prosecutions.... He concedes that on the authority of our decision in *Brown v. Ohio, supra,* the State is not prohibited by the Double Jeopardy Clause from charging respondent with greater and lesser included offenses and prosecuting those offenses in a single trial.... But, he argues, his conviction and sentence on the charges of involuntary manslaughter and grand theft mean that further prosecution on the remaining offenses will implicate the double jeopardy protection against a second prosecution following conviction. The court below never had occasion to address this argument.

The answer to this contention seems obvious to us. Respondent was indicted on four related charges growing out of a murder and robbery. The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now.

Previously we have recognized that the Double Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he has already been tried and acquitted or convicted on the lesser included offense. See *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In *Brown* the State first charged the defendant with "joyriding," that is, operating an auto without the owner's consent. The defendant pleaded guilty to this charge and was sentenced. Subsequently, the State indicted the defendant for auto theft and joyriding, charges which this Court held were barred by the Double Jeopardy Clause, since the defendant had previously been convicted in a separate proceeding of joyriding, which was a lesser included offense of auto theft. *Brown v. Ohio, supra,* at 169, 97 S.Ct. at 2227.

We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown* reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only to resolve part of the charges against him, while the State ob-

---

**6.** Though dispositive of the issue raised herein,    the *Johnson* case was not cited by either party.

jected [7] to disposing of any of the counts against respondent without a trial. Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an "implied acquittal" which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses. Cf. *Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 1761, 26 L.Ed.2d 300 (1970); *Green v. United States,* 355 U.S. at 191, 78 S.Ct. at 225. There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws. *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). [Footnote added.]

We think this is an even clearer case than *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), where we rejected a defendant's claim of double jeopardy based upon a guilty verdict in the first of two successive prosecutions, when the defendant had been responsible for insisting that there be separate rather than consolidated trials. Here respondent's efforts were directed to separate disposition of counts in the same indictment where no more than one trial of the offenses charged was ever contemplated. Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges.

For the foregoing reasons we hold that the Double Jeopardy Clause does not prohibit the State from continuing its prosecution of respondent on the charges of murder and aggravated robbery. [Footnote deleted.]

[¶ 19] Other appellate courts under circumstances similar to those presented by the instant case have embraced the *Johnson* decision. *People v. Torres,* 53 Cal.Rptr.2d 113, 119–20 (Cal.App. 4 Dist.1996); *State v. Donesay,* 265 Kan. 60, 959 P.2d 862, 874–77 (1998); and *see Redman v. State,* 679 N.E.2d 927, 930–31 (Ind.App.1997); *State v. Boomershine,* 85 Ohio App.3d 21, 619 N.E.2d 52, 54–55 (2 Dist.1993); and *Lewis v. Warner,* 166 Ariz. 354, 802 P.2d 1053, 1055–56 (Ariz.App.1990).

[¶ 20] We also embrace the *Johnson* decision and hold that the district court was in error in ordering dismissal of Count 2. This is our decision on the point presented, and it shall govern in any similar case which may be pending at the time this opinion is published, as well as to all future such cases.

---

7. We view the colloquy we quoted from the arraignment as constituting an "objection" by the State to King's theory that by pleading guilty he invoked the protection of double jeopardy principles with respect to Count 2. However, we do not view the *Johnson* decision to require that the State make such an objection under circumstances such as those at issue here in order for the rule enunciated in *Johnson* to apply. We are not asked to decide whether a defendant has an absolute right to enter a plea of guilty to all, or part of, an information, indictment, or citation. Whether that right is absolute or not, the entry of such a plea or pleas will not operate so as to frustrate the State's authority to prosecute all charged crimes to which the defendant has not entered pleas of guilty.