2011 WY 116

**Warren Wayne RATHBUN,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–10–0245.

Supreme Court of Wyoming.

Aug. 8, 2011.

VOIGT, Justice.

[¶1] The appellant was convicted of attempted kidnapping and sentenced to life in prison. He appeals the denial of two pretrial motions to dismiss, and raises two issues concerning sentencing. Finding no error, we affirm.

## ISSUES

[¶2] 1. Was the appellant's prosecution for attempted kidnapping barred by the doctrine of double jeopardy due to his earlier guilty plea to battery?

2. Was the State barred by the doctrine of *res judicata* from refiling the attempted kidnapping charge and seeking a second preliminary hearing after that charge was dismissed following a preliminary hearing where the circuit court judge found a lack of probable cause?

3. Did the district court apply the proper penalty range in imposing sentence?

4. Did the district court's determination of the penalty range in imposing sentence violate the appellant's right to trial by jury?

## FACTS

[¶3] On August 3, 2009, the appellant accosted a woman near her car in the State of Wyoming employee parking garage, and struck her on the head. He was charged with attempted kidnapping, a felony, and battery, a misdemeanor. After a preliminary hearing in circuit court, the attempted kidnapping charge was dismissed without prejudice. Although the reason for the dismissal does not appear in the court order, questions and comments of the circuit court judge during the preliminary hearing indicated a concern that the State had failed to prove probable cause as to all the elements of the charged crime.

[¶4] After the felony was dismissed, the misdemeanor battery case proceeded in circuit court. The appellant pled guilty and was sentenced to 180 days in jail. Subsequently, the appellant was charged anew with attempted kidnapping, and a second preliminary hearing took place, before a different circuit court judge. This time, the

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel. Argument by Ms. Olson.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

appellant was bound over to district court for trial, where he was convicted and sentenced as noted above.

## DISCUSSION

### *Was the appellant's prosecution for attempted kidnapping barred by the doctrine of double jeopardy due to his earlier guilty plea to battery?*

[¶ 5] "This Court reviews *de novo* the question of whether a defendant's constitutional protection against double jeopardy has been violated." *Daniel v. State,* 2008 WY 87, ¶ 7, 189 P.3d 859, 862 (Wyo.2008). In that review, we consider the protections provided by the Fifth Amendment to the United States Constitution and by article 1, section 11 of the Wyoming Constitution to be equivalent. *Id.* at ¶ 8, at 862. Of particular relevance to the present discussion is the precept that the "double jeopardy clause prohibits prosecution of a defendant for a greater offense when he has been previously convicted of the lesser included offense." *Id.*

[¶ 6] The constitutional principle, on its face, is simple: no person may be placed in jeopardy more than once for the same criminal offense. The word "jeopardy" refers to "the risk of conviction and punishment." *Black's Law Dictionary* 912 (9th ed. 2009). This simplicity, however, has been illusory; *see, e.g., Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Federal double jeopardy law appears to have been settled in *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993), with the Supreme Court's holding that "[i]n both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." The inquiry under the same-elements test is "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and succes-sive prosecution." *Id.* Like the United States Supreme Court, this Court recognizes and follows the same-elements test. *See, e.g., Granzer v. State,* 2010 WY 130, ¶ 13, 239 P.3d 640, 645 (Wyo.2010); *Snow v. State,* 2009 WY 117, ¶ 16, 216 P.3d 505, 510 (Wyo. 2009); and *Najera v. State,* 2009 WY 105, ¶ 11, 214 P.3d 990, 994 (Wyo.2009).

[¶ 7] The two offenses at issue in the present case are misdemeanor battery, in violation of Wyo. Stat. Ann. § 6–2–501(b) (LexisNexis 2011) and attempted kidnapping, a felony, in violation of Wyo. Stat. Ann. §§ 6–1–301(a) and 6–2–201(a)(iii) and (d) (Lexis-Nexis 2011). The statutory elements of battery, as charged in this case, are:

1. On or about August 3, 2009.
2. In Laramie County, Wyoming.
3. The appellant.
4. Intentionally.
5. Caused bodily injury to the victim.
6. By use of physical force.

On the other hand, the statutory elements of attempted kidnapping, as charged in this case, are:

1. On or about August 3, 2009.
2. In Laramie County, Wyoming.
3. The appellant.
4. With the intent to commit the crime of kidnapping.
5. Did an act which is a substantial step towards commission of the crime of kidnapping.

[¶ 8] It is clear that each of these statutes contains an element not contained in the other. Battery requires both the use of physical force and resultant bodily injury, neither of which element is contained in the crime of attempted kidnapping. Attempted kidnapping requires the intent to commit the crime of kidnapping, and a substantial step toward commission of that crime—which substantial step logically may or may not involve physical force or bodily injury—neither of which element is contained in the crime of battery. In cases such as this, where two crimes each contain elements not contained in the other, there is no preclusive effect, and the subsequent prosecution does not violate double jeopardy. *Dixon,* 509 U.S. at 704–09,

113 S.Ct. at 2860–63; *Ohio v. Johnson*, 467 U.S. at 501–02, 104 S.Ct. at 2542; *State v. King*, 2002 WY 93, ¶¶ 18–20, 48 P.3d 396, 404–05 (Wyo.2002).

***Was the State barred by the doctrine of res judicata from re-filing the attempted kidnapping charge and seeking a second preliminary hearing after that charge was dismissed following a preliminary hearing where the circuit court judge found a lack of probable cause?***

[¶ 9] "The application of the doctrine of *res judicata* is a question of law that we review *de novo*." *Osborn v. Kilts*, 2006 WY 142, ¶ 6, 145 P.3d 1264, 1266 (Wyo.2006); *see also Willis v. Davis*, 2010 WY 149, ¶ 10, 243 P.3d 568, 570 (Wyo.2010). Before we address the issue as it has been presented in this case, we believe it may be helpful to state some general rules about *res judicata* and its juridical cousin, collateral estoppel.

Res judicata and collateral estoppel are related but distinct concepts. Res judicata bars the relitigation of previously litigated **claims or causes of action.** *Slavens v. Board of County Commissioners*, 854 P.2d 683, 686 (Wyo.1993). Four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.* Collateral estoppel bars relitigation of previously litigated *issues* and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

*Eklund v. PRI Envtl., Inc.*, 2001 WY 55, ¶ 15, 25 P.3d 511, 517 (Wyo.2001) (emphasis in original). A "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court[.]" *Black's Law Dictionary* 281 (9th ed. 2009). An "issue," on the other hand, is "[a] point in dispute between two or more parties ... [that] may take the form of a separate and discrete question of law or fact, or a combination of both." *Id.* at 907.

[¶ 10] The two doctrines—*res judicata* and collateral estoppel—are not always distinguished or readily distinguishable. That confusion is exacerbated in the present case because, not only is there an element of collateral estoppel intertwined with the concept of double jeopardy just discussed, but some of the cases cited by the parties in regard to this issue were actually determined not on the basis of *res judicata* or collateral estoppel, but upon the basis of constitutional due process, or upon the existence of a rule of criminal procedure, or upon particular state law governing preliminary hearings. We will do our best to unmuddy those waters.

[¶ 11] First, we will discuss a few of the United States Supreme Court cases in which the doctrine of collateral estoppel has arisen in a case primarily involving double jeopardy. In *Ashe v. Swenson*, the appellant was charged with six counts of armed robbery for allegedly robbing six participants in a poker game, with each count to be tried separately, *seriatim*. The first jury found the appellant not guilty, with the only issue in dispute being the identity of the appellant as one of the robbers. The United States Supreme Court held that the doctrine of collateral estoppel, as part of the Fifth Amendment guarantee against double jeopardy, prohibited the State of Missouri from bringing the appellant to trial for the robbery of another participant, because the issue of identity had been determined against the State. *Ashe*, 397 U.S. at 443–46, 90 S.Ct. at 1194–96. Though not at issue, the collateral estoppel rationale of *Ashe* was noted in *Brown v. Ohio*, 432 U.S. at 166 n.6, 97 S.Ct. at 2226 n.6, as another "standard for determining whether successive prosecutions impermissibly involve the same offense."

[¶ 12] Fourteen years after publishing *Ashe,* the Supreme Court rejected the application of its collateral estoppel analysis in a case where there was no attempt by the State to prosecute charges serially, and where a guilty plea, rather than a trial, had resolved the first go-round. *Ohio v. Johnson,* 467 U.S. at 500 n.9, 104 S.Ct. at 2541 n.9. The Court stated that "the taking of a guilty plea is not the same as an adjudication on the merits after full trial...." *Id.* Lastly, because *United States v. Dixon* is now the leading case on federal double jeopardy analysis, we will note *obiter dictum* from the majority opinion in that case to the effect that while collateral estoppel "may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts ... this does not establish that the Government 'must ... bring its prosecutions ... together.'" 509 U.S. at 705, 113 S.Ct. at 2860 (emphasis in original).

[¶ 13] We have cited these cases primarily to distinguish the concept of collateral estoppel as a double jeopardy theorem, where the full merits of the case are at issue, from the concept of *res judicata* or collateral estoppel as a bar to the relitigation of more limited matters. For the latter purpose, we will review some of our own cases. For example, in *Martinez v. State,* 2007 WY 164, ¶¶ 11–18, 169 P.3d 89, 91–93 (Wyo.2007), we restated our holding that *res judicata* applies to motions under W.R.Cr.P. 35(a) to correct an illegal sentence, barring both matters that previously have been raised and matters that previously could have been raised. *See also, e.g., Gould v. State,* 2006 WY 157, ¶¶ 14–17, 151 P.3d 261, 266 (Wyo.2006); and *Lacey v. State,* 2003 WY 148, ¶ 10, 79 P.3d 493, 495 (Wyo.2003). Similarly, in *Beck v. State,* 2005 WY 56, ¶ 10, 110 P.3d 898, 901 (Wyo.2005), we held that the doctrine of *res judicata* prevented the appellant from asserting double jeopardy, where that issue was, or could have been previously asserted. *Res judicata* also prohibits an appellant from pursuing credit for time served via a motion to correct an illegal sentence after that issue has been determined in a prior appeal. *McCarty v. State,* 929 P.2d 524, 524–25 (Wyo.1996). Lastly, both the doctrine of *res judicata* and

specific statutory restrictions forbid raising matters in a post-conviction relief petition that were, or could have been, raised on appeal. *Hauck v. State,* 2007 WY 113, ¶ 10, 162 P.3d 512, 515 (Wyo.2007); *Kallas v. State,* 776 P.2d 198, 200 (Wyo.1989); Wyo. Stat. Ann. § 7–14–103(a)(i), (iii) (LexisNexis 2011).

[¶ 14] Twice recently, we have considered the effect of collateral estoppel, rather than *res judicata,* where the same issue arose in related criminal and administrative proceedings. In *Elliott v. State,* 2011 WY 32, ¶ 4, 247 P.3d 501, 503 (Wyo.2011), the appellant contended that the State was collaterally estopped from pursuing a conviction for driving while under the influence where, in a related driver's license suspension proceeding, an administrative hearing examiner found that the arresting officer lacked probable cause to make the arrest. We concluded that collateral estoppel did not bar subsequent criminal prosecution because the last two elements of the doctrine were not met: privity does not exist between local prosecutors pursuing criminal convictions and state transportation department officials seeking license suspensions, and prosecutors are denied a full and fair opportunity to litigate the criminal case in the administrative proceedings. *Id.* at ¶¶ 8–9, at 504.

[¶ 15] Only about a month before *Elliott* was published, we reached a contrary result in a case where the order of proceedings was reversed, as were the positions of the parties in regard to collateral estoppel. In *Bowen v. State,* 2011 WY 1, ¶ 2, 245 P.3d 827, 828 (Wyo.2011), the State contended that the appellant was collaterally estopped from relitigating the issue of the admissibility of breath test results in his administrative driver's license suspension hearing, where the circuit court judge had previously ruled in the related criminal case that the breath test results were admissible. Of focal significance to our conclusion in *Bowen* that collateral estoppel applied were the fact that the appellant was the same party in both proceedings and the fact that he had a full and fair opportunity to litigate the admissibility issue in the criminal case. *Id.* at ¶ 11, at 830–31.

[¶ 16] Our purpose in journeying through these cases is to present the context in which the doctrines of *res judicata* and collateral estoppel are applied in criminal cases such as the one before us. To broaden that endeavor, we will now mention a few cases from other states to see how the issue *sub judice* is treated elsewhere. In California, for instance, neither *res judicata* nor collateral estoppel apply to orders dismissing criminal charges following a preliminary hearing. *Newton v. Superior Court of California*, 803 F.2d 1051, 1055 (9th Cir.1986); *People v. Uhlemann*, 9 Cal.3d 662, 667–68, 108 Cal. Rptr. 657, 660, 511 P.2d 609, 612 (Cal.1973). South Dakota agrees, stressing the fact that jeopardy has not attached during a preliminary hearing, and the fact that no adjudication on the merits occurs. *State v. Fahey*, 275 N.W.2d 870, 871 (S.D.1979). Similarly, Arizona holds that the determination of a preliminary hearing is not a final judgment, and that dismissal of a charge at a preliminary hearing "is not an absolute bar to further proceedings." *State v. Elling*, 19 Ariz. App. 317, 318, 506 P.2d 1102, 1103 (Ariz.Ct. App.1973). The phrase "not an absolute bar" leaves open the possibility that a preliminary hearing determination may be given preclusive effect if it is based upon a factual conclusion that the defendant did not commit the crime, or if the subsequent proceedings evidence the "shuttling" of a case from magistrate to magistrate seeking a favorable order. *Id.* at 1103–04. *See also Painter v. Commonwealth*, 47 Va.App. 225, 236, 623 S.E.2d 408, 413–14 (Va.App.2005); and *Highsmith v. Commonwealth*, 25 Va.App. 434, 439–443, 489 S.E.2d 239, 241–43 (Va.App.1997) (*res judicata* and collateral estoppel available in criminal cases, may preclude further prosecution after determination on the merits, but do not

apply to finding of no probable cause at a preliminary hearing).

[¶ 17] The contrary view—that the state should not be allowed to refile a criminal charge dismissed at the preliminary hearing for lack of probable cause, except in certain circumstances—is shared by several states. Interestingly, however, this contrary view is not grounded in *res judicata* or collateral estoppel, but in due process. The patron saint of this line of reasoning appears to be *Jones v. State*, 1971 OK CR 27, 481 P.2d 169, 171–72 (Okla.Crim.App.1971), where the Oklahoma Court of Criminal Appeals declared that the state could not refile a dismissed charge absent new or previously unavailable evidence, or other good cause, and that the matter must be refiled before the same magistrate who earlier found a lack of probable cause.[1] This approach has also been adopted in Utah and North Dakota. *See State v. Brickey*, 714 P.2d 644, 647–48 (Utah 1986); and *Walker v. Schneider*, 477 N.W.2d 167, 171–74 (N.D.1991).[2]

[¶ 18] The state of the law in regard to the issue of refiling a criminal charge that has been dismissed at preliminary hearing because the state failed to prove probable cause was recently summarized in 4 Wayne R. LaFave, Jerold H. Israel and Nancy J. King, *Criminal Procedure* § 14.3(c), at 333–34 (3d ed. 2007):

> As discussed below, a handful of state courts have concluded that refiling undermines the magistrate's authority and therefore should not be permitted unless the prosecution offers substantial additional evidence. A few others have adopted provisions that preclude refiling, but give the trial court authority to allow the filing

---

1. The holding in *Jones* has been emasculated, or at least seriously undermined, by *Harper v. District Court of Oklahoma County*, 1971 OK CR 182, 484 P.2d 891, 897 (Okla.Crim.App.1971), wherein it was stated that "good cause" could be shown where a prosecutor innocently miscalculated the quantum of evidence required to obtain a bindover. Further, Oklahoma now has a court rule allowing the state to appeal from an adverse ruling at a preliminary hearing, which creates an alternative to a second hearing. *See State ex rel. Fallis v. Caldwell*, 1972 OK CR 158, 498 P.2d 426, 428–29 (Okla.Crim.App.1972).

2. Pennsylvania also appears to follow this reasoning, although its most recent case is so dependent upon the interpretation of a court rule allowing the bindover of "cognate" offenses not specifically alleged in the original charging document that it is difficult to determine the precise basis of the decision. What is clear is that the court was considerably influenced by the fact that the state had the option of appealing the preliminary hearing decision but chose not to do so. *Commonwealth v. Weigle*, 606 Pa. 234, 997 A.2d 306, 315–16 (Pa.2010).

of an information notwithstanding the magistrate's rejection of a bindover, upon a factually supported allegation of sufficient evidence. *The vast majority, however, permit refiling at will, including refiling on the same evidence before a different magistrate, absent proof that the prosecutor's purpose is to harass the defendant.* Although rulings sustaining such authority commonly point to the prosecution's lack of authority to appeal the dismissal in the particular state, the authority to refile without new evidence is also recognized in some of the states that allow a prosecution appeal. In many jurisdictions, support for unlimited refiling also is found in preliminary hearing provisions which specifically state that a dismissal "shall not preclude the state from instituting a subsequent prosecution for the same offense."

(Emphasis added.)

[¶ 19] With this background, we turn our attention to two of our previous cases and to a rule of criminal procedure. In *Richmond v. State,* 554 P.2d 1217, 1221 (Wyo.1976), admittedly without reference either to *res judicata* or collateral estoppel, we held that "one preliminary hearing, unproductive for the State, does not prohibit another." In reaching that conclusion, we specifically rejected *Jones v. State,* the Oklahoma case cited above, see *supra* ¶ 17, and we interpreted the language of F.R.Cr.P. 5.1 indicating that the discharge of a defendant at a preliminary hearing does not preclude subsequent prosecution as being a clarification of existing law, rather than a new rule. *Id.* at 1221–22. We also cited *Thomas v. Justice Court of Washakie County,* 538 P.2d 42, 48 (Wyo. 1975), for the proposition that "the finding of no probable cause does not constitute an acquittal and there will be no bar to another proceeding before another justice of the peace or for a proceeding by indictment." *Richmond,* 554 P.2d at 1222–23.

[¶ 20] When we authored *Richmond,* Wyoming had not adopted the equivalent of F.R.Cr.P. 5.1. Today, however, W.R.Cr.P. 5.1(c) provides as follows:

(c) *Discharge of defendant.*—If from the evidence it appears that there is no probable cause to believe that an offense has been committed or that the defendant committed it, the judicial officer shall dismiss the information and discharge the defendant. *The discharge of the defendant shall not preclude the state from instituting a subsequent prosecution for the same offense.*

(Emphasis added.) Clearly, Wyoming's existing law does not recognize a *res judicata* or collateral estoppel bar to further prosecution under these circumstances.[3] Further, we have never required that a subsequent preliminary hearing take place before a judge other than the judge originally presiding, nor have we ever required the production of additional or different evidence at the subsequent proceeding. Such appears to continue to be the majority rule in this country and we have not been persuaded to abandon it.

[¶ 21] The limited role of the preliminary hearing in Wyoming lends itself to application of the majority rule noted in the above quotation from *Criminal Procedure, see supra* ¶ 18. *See, e.g., Almada v. State,* 994 P.2d 299, 303 (Wyo.1999) ("[T]he true constitutional purpose of the preliminary hearing ... is to obtain a determination by a neutral, detached fact finder that there is probable cause to believe a crime has been committed and that the defendant committed it." (quoting *Garcia v. State,* 667 P.2d 1148, 1154 (Wyo.1983))); *Trujillo v. State,* 880 P.2d 575, 581 (Wyo.1994) ("[T]he only legal justification for [a preliminary hearing] is to protect innocent persons from languishing in jail on totally baseless accusations." (quoting *Haight v. State,* 654 P.2d 1232, 1235 (Wyo.1982))); *Wilson v. State,* 655 P.2d 1246, 1253 (Wyo.1982) ("It is in no sense a trial. The finding of probable cause determines only the propriety of a trial ... and it does not place the accused in jeopardy."); and *Thomas,* 538 P.2d at 50 (preliminary hearing does not determine guilt or innocence, does not consti-

---

**3.** While it would appear that collateral estoppel, rather than *res judicata,* is the appropriate doctrine, were one of the two to be applied, we need not answer that question to resolve the present matter.

tute a verdict of acquittal, and does not protect against further prosecution).[4]

■ [¶ 22] We conclude that the doctrine of *res judicata* neither bars the refiling of charges nor a subsequent preliminary hearing on those charges, where there has been a dismissal of those charges based upon a failure of proof of probable cause at a preliminary hearing. Further, Wyoming law does not require the production of new or different evidence at the subsequent hearing, or that the subsequent hearing take place before the same circuit court judge or magistrate. Constitutional due process considerations are not presently at issue.

### Did the district court apply the proper penalty range in imposing sentence?

■ [¶ 23] The question before us is not whether the district court abused its discretion in imposing a particular sentence upon the appellant. Rather, the question before us is whether the district court sentenced the appellant under the proper statutory subsection. The latter is a question of law that we review *de novo* because, if the appellant was sentenced under the wrong statute, his sentence is illegal. *Robison v. State*, 2011 WY 4, ¶ 10, 246 P.3d 259, 263 (Wyo.2011). This is also a question of law because it involves statutory construction. *Johnson v. City of Laramie*, 2008 WY 73, ¶ 7, 187 P.3d 355, 356 (Wyo.2008).

[¶ 24] Three statutes are relevant. Wyo. Stat. Ann. § 6-1-301(a)(i) (LexisNexis 2011) defines the effect of an attempt to commit a crime as applicable in this case:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

In turn, Wyo. Stat. Ann. § 6-1-304 (LexisNexis 2011) establishes how punishment is to be determined for attempt crimes:

The penalty for attempt, solicitation or conspiracy is the same as the penalty for the most serious crime which is attempted, solicited or is an object of the conspiracy except that an attempt, solicitation or conspiracy to commit a capital crime is not punishable by the death penalty if the capital crime is not committed.

Finally, the crime of kidnapping is defined in Wyo. Stat. Ann. § 6-2-201 (LexisNexis 2011):

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:

(i) Hold for ransom or reward, or as a shield or hostage;

(ii) Facilitate the commission of a felony; or

(iii) Inflict bodily injury on or to terrorize the victim or another.

(b) A removal or confinement is unlawful if it is accomplished:

(i) By force, threat or deception; or

(ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen (14) or who is adjudicated incompetent.

(c) If the defendant voluntarily releases the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not more than twenty (20) years.

(d) If the defendant does not voluntarily release the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101.

■ [¶ 25] We have previously held that kidnapping is a single crime described in Wyo. Stat. Ann. § 6-2-201(a) and (b), and

---

4. The four separate opinions in *State v. Faltynowicz*, 660 P.2d 368 (Wyo.1983), provide an interesting discussion of issues related to preliminary hearings, dismissal of criminal charges with prejudice, the bill of exceptions, and the constitutional separation of powers.

that subsection (c), rather than defining a lesser-included offense, describes mitigating conduct subsequent to the kidnapping that may allow for a reduced sentence. *Loomer v. State,* 768 P.2d 1042, 1046–47 (Wyo.1989). The appellant bears the burden of proving such mitigating conduct and, if competent evidence of such is produced, the question must be presented to the jury. *Id.* at 1047. It logically follows that, where there has not been a completed kidnapping, but instead an attempted kidnapping, the mitigating circumstances described in subsection (c) cannot occur. *See, e.g., Rainwater v. State,* 189 Ariz. 367, 368, 943 P.2d 727, 728 (Ariz.1997) ("[A]s a matter of law, the reduction presupposes that all elements of a completed kidnapping have been established such that the victim has in fact been restrained."); and *Laraby v. State,* 710 P.2d 427, 428 (Alaska Ct.App.1985) (The legislature's hope of encouraging the release of kidnap victims unharmed is unnecessary in the case of attempted kidnapping.).[5]

 [¶ 26] We recognize the potential "anomaly" in the statute that a person who completes a kidnapping but releases the victim unharmed could be subject to a lesser penalty than a person who merely attempts a kidnapping, but anomalies created by statute are not to be corrected by the court. *Rainwater,* 943 P.2d at 728 n. 2. In regard to this statute, such judicial "meddling" would violate two principles. First, the legislature has exclusive authority over criminal punishment and sentencing. *See, e.g., Billis v. State,* 800 P.2d 401, 416 (Wyo.1990); *Duffy v. State,* 730 P.2d 754, 756 (Wyo.1986); and *Stambaugh v. State,* 613 P.2d 1237, 1243 (Wyo.1980). And second, it is not our role, because it violates the constitutional principle of separation of powers, to supply what appear to us to be omissions in a statute, or to correct what appear to us to be defects in a statute. *See, e.g., Merrill v. Jansma,* 2004 WY 26, ¶ 29, 86 P.3d 270, 285 (Wyo.2004); *State ex rel. Wyo. Worker's Comp. Div. v. Mahoney,* 798 P.2d 836, 838 (Wyo.1990); *In re TR,* 777 P.2d 1106, 1111 (Wyo.1989); *State ex rel. Albany County Weed & Pest Dist. v. Bd. of County Comm'rs of Albany County,* 592 P.2d 1154, 1157 (Wyo.1979); and *In re Adoption of Voss,* 550 P.2d 481, 484–85 (Wyo.1976).

[¶ 27] The district court correctly applied the sentencing provisions of Wyo. Stat. Ann. § 6–2–201(d) after the appellant was convicted of attempted kidnapping.

### *Did the district court's determination of the penalty range in imposing sentence violate the appellant's right to trial by jury?*

 [¶ 28] Once again, this is not a contention that the district court abused its discretion in the particular sentence it imposed upon the appellant. Instead, it is a contention that the district court violated the appellant's right to trial by jury by determining which sentencing range—which statutory subsection—was applicable in sentencing the appellant. Because this constitutional issue was not raised below, we review for plain error. *Zumberge v. State,* 2010 WY 111, ¶ 4, 236 P.3d 1028, 1030 (Wyo.2010).

> Even when constitutional error is alleged, each criterion must be satisfied or a claim for review under the plain-error doctrine will fail. To establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him.

*Id.* (quoting *Snow,* 2009 WY 117, ¶ 13, 216 P.3d at 509 (citations, quotation marks, and footnotes omitted)).

[¶ 29] The parties' positions in regard to this issue are clear and straightforward. The appellant argues that, by sentencing him under Wyo. Stat. Ann. § 6–2–201(d), rather than § 6–2–201(c), the district court violated the holding of *United States v. Booker,* 543 U.S. 220, 234–35, 125 S.Ct. 738, 751, 160 L.Ed.2d 621 (2005), that a sentencing judge may not find facts that take a sentence beyond the sentencing range supported by the

---

**5.** The rationale of these cases applies here, even though the statutory schemes in both states are slightly different than Wyoming's.

jury's verdict alone. To the contrary, the State argues that *Booker* has not changed the law of *Apprendi v. New Jersey*, 530 U.S. 466, 490 n.16, 120 S.Ct. 2348, 2363 n.16, 147 L.Ed.2d 435 (2000), wherein it was held that, while facts in aggravation of sentence must be found by a jury, facts in mitigation of sentence may be found by the judge.[6] The point of *Apprendi* is this: if a required finding of fact exposes the defendant to a greater penalty than that authorized by the jury's guilty verdict, that finding must be made by the jury. *Id.* at 530 U.S. at 494, 120 S.Ct. at 2365.

[¶ 30] We conclude that the sentencing structure of Wyo. Stat. Ann. § 6–2–201(c) and (d), as previously interpreted by this Court in *Loomer*, is a structure that is authorized by *Apprendi*.[7] There is one crime—kidnapping—for which the maximum sentence is as stated in Subsection (d). Where there has been a completed kidnapping, the defendant is at liberty to produce evidence to prove, in mitigation of sentence, that he or she voluntarily released the victim substantially unharmed. If that is not accomplished, the sentencing range remains as it is stated in Subsection (d). Of even more significance to the instant case is the inescapable conclusion, from the clear language of the statute, that any evidence in mitigation can only be evidence of post-kidnapping conduct, meaning that Subsection (c) does not apply to attempted kidnapping. Thus, there was no constitutional violation in the procedure by which the appellant was sentenced.

## CONCLUSION

[¶ 31] The appellant's prosecution for attempted kidnapping was not barred by the doctrine of double jeopardy because battery is not a lesser-included offense to attempted kidnapping under the same-elements test. Neither the doctrine of *res judicata* nor the doctrine of collateral estoppel bars the refiling of a criminal charge and a subsequent preliminary hearing after a charge has been dismissed following a preliminary hearing where a lack of probable cause was found. The district court applied the proper punishment range in sentencing the appellant, and the district court's determination of the appropriate punishment range did not violate the appellant's right to trial by jury.

[¶ 32] Affirmed.

---

**6.** These limitations are not referencing the judge's traditional role in determining what sentence to impose out of a prescribed sentencing range. These sentencing limitations simply prohibit the judge from imposing a sentence provided in a higher or enhanced sentencing range, based upon facts found by the judge, rather than by the jury.

**7.** In fact, as interpreted by *Loomer*, Wyoming's statutory scheme exceeds that which is required by *Apprendi* because we said in *Loomer* that mitigating circumstances were to be submitted to the jury. *Loomer*, 768 P.2d at 1047. Because a jury's guilty verdict in a kidnapping case subjects the defendant to the full punishment of Wyo.

Stat. Ann. § 6–2–201(d), *Apprendi* would not require the jury to consider mitigating circumstances that could reduce the punishment range. Similarly, it is not unconstitutional to assign to a defendant the burden of proving an affirmative defense, or the burden of proving mitigating circumstances at sentencing. *Kansas v. Marsh*, 548 U.S. 163, 169–75, 126 S.Ct. 2516, 2522–26, 165 L.Ed.2d 429 (2006); *Patterson v. New York*, 432 U.S. 197, 205, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281 (1977); *United States v. Contreras*, 536 F.3d 1167, 1173–74 (10th Cir.2008); *State v. Drej*, 2010 UT 35, 233 P.3d 476, 479, 481, 483 (Utah 2010); *State v. Ray*, 290 Conn. 602, 966 A.2d 148, 161 (Conn.2009); *State v. Eagle*, 196 Ariz. 188, 994 P.2d 395, 399 (Ariz.2000).